IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CASIMIRO GRACIANO,                    )
                                      )
                Plaintiff,            )
                                      )
        v.                            )        1:17CV889
                                      )
BLUE SKY LOGISTICS LLC and            )
MICHAEL WALKER DANIELS,               )
                                      )
                                      )
                Defendants.           )


## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiff Casimiro Graciano seeks recovery for personal injuries suffered in a traffic accident. Plaintiff was operating a tractor-trailer on March 1, 2016, in Surry County, North Carolina, and was hit from behind by a tractor-trailer operated by Defendant Michael Walker Daniels ("Daniels"), who worked for Defendant Blue Sky Logistics LLC ("Blue Sky"). On July 16, 2019, this court held a bench trial. Plaintiff, Plaintiff's counsel, and Defendants' counsel were present at trial. Neither Defendant appeared for trial despite notice from this court.

This court issued findings of fact and conclusions of law regarding liability in open court following the trial, pursuant to Federal Rule of Civil Procedure 52(a). This court found in Plaintiff's favor as to liability, determining that Daniels

negligently operated a tractor-trailer by failing to reduce
speed to avoid an accident and, as a result, crashed into the
rear of Plaintiff's tractor-trailer on March 1, 2016. This court
will briefly make additional findings of fact as to liability
and then proceed to damages.

These written findings of fact and conclusions of law are
issued pursuant to Federal Rule of Civil Procedure 52(a). For
the following reasons, this court finds that Defendants are
liable for negligence and that Plaintiff is entitled to recover
damages in a total amount of $116,897.91.

## I.   <u>**PARTIES**</u>

Plaintiff was a citizen and resident of Texas at the time
of filing. (Complaint ("Compl.") (Doc. 1) ¶ 1.) Blue Sky is a
Utah corporation headquartered in Utah and Daniels is a citizen
of Nevada. (<u>Id.</u> ¶¶ 2-3.) The amount in controversy exceeds
$75,000.00. (<u>Id.</u> ¶ 4.) Venue is proper in the Middle District of
North Carolina because the accident occurred within the
district. <u>See</u> 28 U.S.C. § 1391(b)(2).

Plaintiff alleges that Blue Sky is responsible for Daniels'
actions under the doctrine of respondeat superior. (<u>Id.</u> ¶¶ 41,

43, 60-62.) Defendants admit that Blue Sky employed Daniels as a driver at the time of the accident. (Pl.'s Ex. 12 ¶¶ 2, 4.)[1]

## II.  <u>JURISDICTION AND GOVERNING LAW</u>

Jurisdiction is based upon diversity of citizenship. <u>See</u> 28 U.S.C. § 1332. A federal court sitting in diversity jurisdiction applies state substantive law and federal procedural law. <u>See</u> <u>Hanna v. Plumer</u>, 380 U.S. 460, 465-66 (1965); <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 72-73, 79-80 (1938). A federal court sitting in North Carolina must use North Carolina conflict of law rules. <u>See, e.g.</u>, <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496-97 (1941).

North Carolina courts have consistently held "that matters affecting the substantial rights of the parties are determined by lex loci, the law of the situs of the claim . . . . For actions sounding in tort, the state where the injury occurred is considered the situs of the claim." <u>Boudreau v. Baughman</u>, 322 N.C. 331, 335, 368 S.E.2d 849, 853-54 (1988). Because damages are a substantive issue, they must also be determined under the law of the state of injury. <u>See</u> <u>Tenn. Carolina Transp., Inc. v. Strick Corp.</u>, 283 N.C. 423, 440, 196 S.E.2d 711, 722 (1973);

---

[1] All exhibits were admitted during the trial in hard copy form. (<u>See</u> Exhibit and Witness List attached to Doc. 67.)

<u>Stetser v. TAP Pharm. Prods., Inc.</u>, 165 N.C. App. 1, 15-16, 598 S.E.2d 570, 580-81 (2004).

The vehicle accident and alleged injuries occurred in North Carolina. Therefore, this court will apply North Carolina law to determine both liability and damages.

Additionally, the Federal Rules of Evidence provide that "[i]n a civil case, state law governs the effect of a presumption regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 302. The Fourth Circuit has recognized that some evidentiary rules straddle the line between procedure and substance and "that a state procedural rule must be followed in a diversity case if it is intimately bound up with the state right or obligation." <u>DiAntonio v. Northampton-Accomack Mem'l Hosp.</u>, 628 F.2d 287, 291 (4th Cir. 1980) (internal quotation marks and citation omitted); <u>see also</u> <u>Hottle v. Beech Aircraft Corp.</u>, 47 F.3d 106, 109-10 (4th Cir. 1995). Any North Carolina-specific evidentiary presumptions that bear upon substantive state policy decisions apply to this case.

## III. <u>LIABILITY</u>

This court adopts and incorporates herein its findings made in open court following the bench trial. This court found that Daniels was negligent by failing to reduce speed to avoid a

collision. A negligence claim has four elements: "[1] defendants owed plaintiff a duty of care, [2] defendants' conduct breached that duty; [3] the breach was the actual and proximate cause of plaintiff's injury; and [4] damages resulted from the injury." Lamm v. Bissette Realty, Inc., 327 N.C. 412, 416, 395 S.E.2d 112, 115 (1990). In summary, Daniels was negligent in that he owed Plaintiff a duty of reasonable care while operating his tractor-trailer; he breached that duty by failing to reduce speed to avoid an accident; and his negligence was the actual and proximate cause of injury to Plaintiff resulting in damages.

Blue Sky admits that it employed Daniels at the time of the crash and that Daniels was acting in the scope of his employment. (Pl.'s Ex. 12 ¶¶ 2, 4.) An employer is liable under respondeat superior for an employee's tortious act "(1) when expressly authorized; (2) when committed within the scope of his employment and in furtherance of his master's business — when the act comes within his implied authority; (3) when ratified by the principal." Snow v. De Butts, 212 N.C. 120, 193 S.E. 224, 226 (1937); see also Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 491, 340 S.E.2d 116, 121–22 (1986). At the time of the accident, Daniels was working in the scope of his employment, in furtherance of Blue Sky's business, and within his implied authority to drive trucks.

Blue Sky and Daniels are jointly and severally liable for Plaintiff's injuries arising from the March 1, 2016 accident.

## IV. **DAMAGES**

The principle dispute between the parties relates to damages. Plaintiff contends that he is entitled to recover damages of $360,000.00.[2] Defendants argue that they are liable for, at most, $55,000.00.

### A. **Legal Framework**

In North Carolina, a plaintiff bears the burden of proving "both that the medical attention [the plaintiff] received was reasonably necessary for proper treatment of [plaintiff's] injuries and that the charges made were reasonable in amount." Ward v. Wentz, 20 N.C. App. 229, 232, 201 S.E.2d 194, 197 (1973); see also Jacobsen v. McMillan, 124 N.C. App. 128, 134–35, 476 S.E.2d 368, 372 (1996). The plaintiff must also "show that the medical records at issue reflect treatment of an injury that was causally related to the alleged negligence of the defendant." Daniels v. Hetrick, 164 N.C. App. 197, 201, 595 S.E.2d 700, 703 (2004); see also Gillikin v. Burbage, 263 N.C.

---

[2] During closing arguments, Plaintiff's counsel identified the following damage amounts: (1) $16,000.00 for lost wages, (2) $109,000.00 for past medical expenses, (3) $10,000.00 for future medical expenses, (4) $73,000.00 for past pain and suffering, (4) $16,000.00 for future pain and suffering, (5) $55,000.00 for past physical impairment, and (6) $82,000.00 for future physical impairment. These amounts add to $361,000.00.

317, 324, 139 S.E.2d 753, 759 (1965) ("To hold a defendant responsible for a plaintiff's injuries, defendant's negligence must have been a substantial factor, that is, a proximate cause of the particular injuries for which plaintiff seeks recovery."). A doctor may demonstrate the causal connection of medical bills "by his own opinion, or by testifying that he either relied on [certain] documents for his diagnosis or that the documents reflect the work of another medical professional to whom the plaintiff was referred by him." Daniels, 164 N.C. App. at 201, 595 S.E.2d at 703.

N.C. Gen. Stat. § 8-58.1 establishes a rebuttable presumption that the amount of medical expenses is reasonable when the injured party testifies regarding medical bills.[3] However, the statute requires that "records or copies of such charges showing the amount paid or required to be paid in full satisfaction of such charges accompany such testimony." N.C. Gen. Stat. § 8-58.1(a). The statute also "establishes a permissive presumption that [any] services provided were reasonably necessary." N.C. Gen. Stat. § 8-58.1(c). But "no presumption is established that the services provided were

---

[3] This court is satisfied that § 8-58.1 articulates a state public policy to lower the evidentiary burden for injured plaintiffs seeking to recover medical expenses in negligence cases. Therefore, § 8-58.1 applies in a federal diversity case under the Hottle standard. See Hottle, 47 F.3d at 109-10.

-7-

necessary because of injuries caused by the acts or omissions of an alleged tortfeasor." Id. While lay testimony is permitted to establish causation in simple cases, "where the exact nature and probable genesis of a particular type of injury involves complicated medical questions . . . , only an expert can give competent opinion evidence as to the cause of the injury." Click v. Pilot Freight Carriers, Inc., 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980); accord Peagler v. Tyson Foods, Inc., 138 N.C. App. 593, 598-601, 532 S.E.2d 207, 210-12 (2000) (finding that expert testimony was required to show a connection between the plaintiff's work accident and herniated disk).

### B.   Undisputed Facts

Two damage categories are not in dispute. Plaintiff and Defendants agree that Plaintiff is entitled to recover lost wages of $16,000.00. Further, Defendants concede that Plaintiff is entitled to recover expenses associated with the decompression surgery performed by Dr. Jose Dones-Vazquez ("Dr. Dones") on January 31, 2017, in the amount of $13,540.00. This court agrees that Plaintiff should recover at least $29,540.00 for lost wages and past medical expenses. The remaining issues are disputed, in whole or in part.

## C. **Findings of Fact**

This court begins its analysis with relevant findings of fact and will then proceed to legal analysis, discussing evidentiary issues as necessary.

1.   Plaintiff was born on June 14, 1987, and is 32 years old. Plaintiff was 28 years old at the time of the accident. Prior to the accident, Plaintiff credibly testified, and Defendants do not appear to dispute, that he did not have any neck or back pain. Immediately following the crash, this court finds that Plaintiff experienced neck and back pain that was proximately caused by the accident. Both medical doctors agree, and this court finds, that the accident was the proximate cause of Plaintiff's neck and back pain. (See Pl.'s Ex. 1 at 32 ("[I]f that didn't happen then the mechanism of injury certainly goes along with his complaint."); Pl.'s Ex. 2 at 31 ("[W]e have to assume that, indeed, the crash was the one that, you know, unravel all this — you know, his problems.").) In general, to the extent Plaintiff sought medical treatment for neck and back pain in the year following the accident, this court finds that the accident was likely a but-for cause of this treatment.

2.   The accident occurred on March 1, 2016. (Compl. (Doc. 1) ¶¶ 42–47.) This court credits Plaintiff's testimony that he was shaken up and experienced pain, particularly in his

back, immediately after the accident. Plaintiff remained in his tractor-trailer, called 911, and required assistance to get out of the truck. This court also credits the testimony of Plaintiff's wife, Edith Graciano, who testified that Plaintiff appeared to be in pain when he first returned home after the accident.

3.    Following the accident, Plaintiff was transported by ambulance to a hospital — Twin County Regional Hospital in Galax, Virginia — where he was treated for a few hours and then released. Plaintiff subsequently received bills from the Twin County emergency room for $4,982.25, (see Pl.'s Ex. 35), and from Surry County Emergency Services for $746.50, (see Pl.'s Ex. 33), for a total expense of $5,728.75. No evidence has been presented to suggest these charges are not reasonable and Defendants' expert, Dr. Ronald Gioffre, reviewed these records and did not indicate any belief that they were not connected to the accident. (See Pl.'s Ex. 3 at 9; Defs.' Ex. 4.)

4.    According to his testimony, Plaintiff was released from Twin County Regional Hospital and instructed to "get more tests." Plaintiff took a taxi to a nearby hotel, where he spent the night. Plaintiff was able to walk on his own without assistance, obtained his prescribed medication, traveled to a storage facility, and was picked up by a co-worker in

another tractor-trailer. Plaintiff traveled with his co-worker to Pennsylvania to deliver a load and then returned home to Texas, arriving a few days after the accident. Plaintiff testified, and this court finds, that Plaintiff did not drive during that trip because he was taking prescribed medications which made him drowsy.

5.    Upon returning to Texas, Plaintiff continued to have neck and back pain. Plaintiff sought treatment at the emergency room of Valley Baptist Medical Center on March 7, 2016. Plaintiff received two separate bills for that visit, including related treatment: one from Palm Valley Emergency Phys for $1,070.00, (see Pl.'s Ex. 31), and one from Valley Baptist Medical Center for $2,423.85, (see Pl.'s Ex. 36). Plaintiff testified that he was released from the hospital, given medication, and instructed to "go find a back doctor." Dr. Gioffre expressed no concern about this treatment.

6.    This court credits Plaintiff's testimony that he continued to experience some pain for several months following the accident. This court finds that the pain was sufficient to cause physical limitations for a period of several months. Plaintiff remained out of work for three-and-a-half months. During that time, this court credits Plaintiff's testimony that he was not able to work as a tractor-trailer driver. Plaintiff

ultimately returned to work in a less physically-demanding position driving refrigerator trucks, which does not require the driver to load and secure the shipment.

7.    After his treatment and release from Valley Baptist Medical Center, Plaintiff sought treatment from a "back doctor" — Dr. John Morrison at the Rio Grande Health Clinic. Dr. Morrison, a chiropractor, did not testify at trial. Although this court does not impugn Plaintiff's decision to see Dr. Morrison, there is no evidence that the treatment Dr. Morrison provided was reasonably necessary. Even if this court credits the release instructions from Valley Baptist Medical Center as substantive evidence that it was reasonably necessary for Plaintiff to see a back doctor, there is no evidence from which this court can conclude that Dr. Morrison was a back doctor capable of rendering the recommended treatment. While Dr. Dones referred to "conservative treatment" that Plaintiff received prior to the 2017 surgery, Dr. Dones never mentioned Dr. Morrison specifically and the testimony of Dr. Dones provides no basis for the court to conclude that Dr. Morrison's treatment was reasonably necessary or addressed injuries caused by the crash.

8.    Dr. Morrison referred Plaintiff to Dr. Michael Forman at the Headache and Pain Center. Dr. Forman did not testify at trial, nor can this court determine that Dr. Forman's full

medical records were introduced into evidence. Dr. Dones and Dr. Forman worked together to treat Plaintiff on at least some occasions, (see Pl.'s Ex. 2 at 29), so some of Dr. Forman's records are included within Dr. Dones' medical records. (See Pl.'s Ex. 10.) According to Plaintiff's testimony, Dr. Forman gave epidural steroid injections to Plaintiff prior to the 2017 surgery. Defendants object to Forman's records and bills due to lack of evidence establishing causation.

9.    Dr. Forman referred Plaintiff to Dr. Dones. Defendants object to the introduction of Dr. Dones' medical records to the extent Dr. Dones did not explain those records. However, the records were introduced through Dr. Dones during his deposition. (See Pl.'s Ex. 2 at 32; Pl.'s Ex. 10.) Dr. Dones testified that he kept the records in the ordinary course of business and created them at or near the time he saw or diagnosed Plaintiff. (Pl.'s Ex. 2 at 32.) Dr. Dones also testified that that he relied on the records to make treatment decisions. (Id.) Dr. Dones identified Plaintiff's Exhibit 10 as the paper file he brought to his deposition, apparently the same as or similar to Plaintiff's Exhibit 9.

10.    The personal records of Dr. Dones, as admitted, reflect the following treatment dates, (see generally Pl.'s Ex. 9):

- May 9, 2016: Plaintiff appeared for an initial consultation and was examined for cervical pain. Dr. Dones noted that Plaintiff had "completed conservative treatment with slight improvement." Dr. Dones diagnosed a "broad based disc at L4-5" and recommended pain medication and injections if symptoms did not improve.

- August 29, 2016: Plaintiff underwent a cervical discogram.

- December 5, 2016: Plaintiff was examined for complaints of neck pain. Dr. Dones reviewed Plaintiff's discogram results and noted a contained disc at C6-7. The care plan indicates that "patient will benefit from disc decompression at C6-7 to be done with Dr. Forman."

- January 31, 2017: Dr. Dones' surgical notes state that a cervical disc decompression was performed.

- February 13, 2017: Post-surgery evaluation. Dr. Dones noted that Plaintiff had shown "marked improvement of symptoms after surgery" and "was advised to stay active as tolerated and to follow up as needed."

11. As described above, Dr. Dones examined and treated Plaintiff intermittently from May 2016 until February 2017. Dr. Dones ordered an EMG and a discogram of Plaintiff's cervical area prior to the decompression surgery. (Pl.'s Ex. 2 at 22–25.) The EMG was performed by Lonestar Neuro Diagnostics &

Rehab at a cost of $2,680.00. (Pl.'s Ex. 9; Pl.'s Ex. 30.)
Dr. Dones then recommended and performed a disc decompression
procedure. (Pl.'s Ex. 2 at 26). The procedure was performed at
the Headache and Pain Center with Dr. Forman on January 31,
2017. (Id. at 28-30; Pl.'s Ex. 34.) Dr. Dones last saw Plaintiff
in February 2017 and assumes Plaintiff has been doing okay
"because . . . he hasn't been seen in the office" since. (Pl.'s
Ex. 2 at 31.)

  12. In terms of continuing pain, this court does not
find Plaintiff's testimony fully believable or persuasive.
Plaintiff testified that he continues to experience certain
limitations because of his injuries and associated pain. For
example, Plaintiff stated that he must wear a supportive belt
while mowing the lawn, cannot play with his children in a normal
manner, and requires help from his wife to perform certain
household chores. This court does not fully credit that
testimony for several reasons.

  First, neither Dr. Dones nor Dr. Gioffre expressed a
medical opinion that Plaintiff has any continuing injury or
should limit himself in any activities. Dr. Dones testified that
Plaintiff was better and improved after the surgery and did not
come in for further visits. (Pl.'s Ex. 2 at 30.) Dr. Gioffre
provided a ten percent disability rating for Plaintiff's neck

and no disability rating for Plaintiff's lower back. (Pl.'s Ex. 1 at 32–34.) But Dr. Gioffre also testified that this rating was based only on the possibility of arthritic issues in the future and that, in his belief, Plaintiff does not currently need any further treatment or suffer from any limitations. (Id. at 33.)

Second, this court finds that the limitations Plaintiff identified are most likely caused by subjective beliefs about what movements might cause pain. This is not persuasive on an objective basis, particularly in light of expert testimony that Plaintiff is not physically limited. Neither doctor indicated that Plaintiff would need a brace to mow the lawn, and Plaintiff's challenges mowing the lawn appear inconsistent with his ability to continue driving and operating a tractor-trailer for long periods.

Third, Plaintiff has not sought medical treatment of any kind since moving to Florida approximately two years ago. At the time of Plaintiff's deposition, Plaintiff testified he was not taking any medication, including Advil. The court finds this behavior inconsistent with Plaintiff's testimony regarding the pain he experiences after doing household chores. This court accepts that Plaintiff has experienced occasional minor pain and aggravation in his back since the surgery. However, this court

finds, based on the expert testimony, that this pain and
aggravation is nominal.

13.   Dr. Gioffre found that Plaintiff had a ten
percent disability rating of the spine. Dr. Gioffre explained:

> First of all, it's a very generous disability that I
> gave him and what it means is this, by definition a
> disability is, is your anatomy of your neck any
> different now than what it was before the injury, that
> answer is yes. Why, because you had a piece of your
> body or your disc removed. That might set you up for
> some traumatic arthritic changes in your neck in the
> future. So I gave him all the benefit of the doubt
> that all might happen and then I gave him ten percent,
> which most people would give you ten percent if they
> opened your neck and put a bone graft in there and
> plate.

(Pl.'s Ex. 1 at 33.) This court credits that testimony and
Dr. Gioffre's testimony that Plaintiff need only take Aleve or
Advil periodically to manage any pain. (Id. at 33–34.) Neither
Dr. Gioffre nor Dr. Dones indicated that he would place any
limitation on Plaintiff's activities. The testimony by Plaintiff
and his wife regarding physical limitations is simply not
persuasive in light of the expert medical testimony.

### D.   Conclusions of Law

#### 1.   Emergency Services

This court finds that, as to the emergency room bills and
transport charge, Plaintiff is entitled to the presumptions in
N.C. Gen. Stat. § 8-58.1. This court does have some concerns
regarding the second emergency room trip, to Valley Baptist

Medical Center on March 7, 2016. However, the services appear reasonably necessary to treat ongoing neck and back pain caused by the accident (pursuant to the presumption in N.C. Gen. Stat. § 8-58.1(c)). This court further concludes that the very small gap in time (six days) between the accident and this visit suggests that expert testimony is not necessary to link this treatment to the accident. These services were reasonably necessary emergency services immediately following the accident. Therefore, their causation and necessity are not in dispute and were established by Plaintiff's lay testimony.

Plaintiff may recover $5,728.75 for his treatment in Virginia and $3,493.85 for his treatment at Valley Baptist in Texas (a total amount of $9,222.60).

### 2. <u>Records for Headache and Pain Center Treatment</u>

This court finds that Dr. Dones' <u>personal</u> medical records, including his statements and Plaintiff's statements within those records, are admissible pursuant to both Fed. R. Evid. 803(6), business records,[4] and 803(4), statements made for medical diagnoses or treatment. Although the portions of Plaintiff's

---

[4] This court also finds that Dr. Dones' records are accompanied by an affidavit of the custodian identifying the records. Defendants had access to these records and the affidavit before trial, and thus had a fair opportunity to challenge those records. (<u>See</u> Pl.'s Ex. 2 at 32-33.) This court finds, alternatively, that the records are admissible pursuant to Fed. R. Evid. 803(6)(D), 803(6)(E), and 902(11).

Exhibits 9 and 10 prepared independently by Dr. Dones are admissible, the documents also include the records of other medical providers — Dr. Forman, LV Imaging, Aldon B. Williams, MD, and Dr. Morrison. While Dr. Dones may have relied upon those records, neither he nor anyone acting under his direction prepared those third-party records.

The third-party records are thus "double hearsay"; "[a]ny information provided by another person, if an outsider to the business preparing the record, must itself fall within a hearsay exception to be admissible." United States v. Gwathney, 465 F.3d 1133, 1141 (10th Cir. 2006); see also Fed. R. Evid. 805. If double hearsay does not independently qualify under an exception, "the only way to save the record from the jaws of the hearsay exclusion is to establish that the business recipient took precautions to guarantee the accuracy of the given information. United States v. Pendergrass, Nos. 93-5422, 93-5738, 93-5423, 93-5425, 1995 WL 56673, at *4 (4th Cir. 1995).

Here, the third-party records contained within Dr. Dones' records do not appear to fall within an independent hearsay exception, nor has Plaintiff argued that they do. There is also no evidence that Dr. Dones sought to independently verify any information in these records. No other medical records have been presented to support Dr. Forman's bills, and Dr. Dones' tacit

endorsement of pre-surgery "conservative treatment" is not sufficient to save these records because Dr. Dones did not identify any specific treatment that he felt was conservative.

Therefore, this court finds that the third-party records are not admissible. Plaintiff is not entitled to the presumptions in N.C. Gen. Stat. § 8-58.1 for treatment rendered by Dr. Morrison or Dr. Forman because full records documenting this treatment have not been admitted into evidence. Further, because this treatment occurred weeks and months after the accident, this court finds that Plaintiff cannot rely on his own recollection alone and instead must establish the necessity of and reason for the treatment through expert testimony.

Even assuming the third-party records were admissible, this court is not able to determine which charges relate to which services. For example, Plaintiff's spreadsheet alleges a total cost for the Headache and Pain Center of $63,774.40. (See Pl.'s Ex 3.) Those records reflect two insurance payments, one for $5,000.00 and one for $250.00, that neither Plaintiff nor his wife explained during their testimony. (See Pl.'s Ex. 34.) More significantly, the records reflect treatment on dates for which there is no corresponding medical explanation and this court is unable to match the expert testimony to specific charges, in certain instances. For example, the billing records reflect that

Plaintiff was treated by Dr. Forman and Jose Roman on April 14, 20, and 27, 2016. (Pl.'s Ex. 34 at 2.) However, there are no corresponding medical records to explain what treatment Plaintiff received on those dates.

This court is also unable to determine, in some instances, exactly which treatments were recommended by which doctor. For example, Dr. Dones testified that he referred Plaintiff for a steroid injection in the lumbar spine. (See Pl.'s Ex. 2 at 45–46.) However, Dr. Dones could not recall whether Plaintiff ever received this injection, from whom Plaintiff would have received the injection, or the specific cost of the injection as it would appear in the medical billing records.

While the charges may be reasonable in amount, this court is unable to find that the services were reasonably necessary due to injuries caused by the accident. In the absence of the § 8-58.1 presumptions, Plaintiff bears the burden of showing "that the medical attention [he] received was reasonably necessary" due to injuries caused by Defendants' negligence. Ward, 20 N.C. App. at 232, 201 S.E.2d at 197. Plaintiff has presented no admissible expert testimony that Dr. Morrison's treatment was reasonably necessary or linked to the accident. Dr. Dones' testimony is not sufficiently specific for the court to conclude that Dr. Dones referred Plaintiff for any steroid

injection (or other non-surgical treatment) that either Dr. Morrison or Dr. Forman ultimately performed. Therefore, Plaintiff may not recover the $11,920.94 expense for Dr. Morrison's treatment. Plaintiff also may not recover the portion of the Headache and Pain Center bill not specifically tied to the decompression surgery because there is no direct evidence that this treatment was reasonably necessary or causally related.

### 3. Decompression Surgery

The total cost of Dr. Dones' own treatment was $13,540.00. (Pl.'s Ex. 3; Pl.'s Ex. 28.) The Headache and Pain Center issued two separate charges for the January 31, 2017 surgery (one for $3,502.37 and one for $891.94)[5], (see Pl.'s Ex. 34); Lonestar Neuro Diagnostics charged $2,680.00 for the EMG and NCV scans Plaintiff received at Dr. Dones' direction prior to surgery, (see Pl.'s Ex. 30); and Accion Rehab charged $461.00 for the cervical collar that Plaintiff wore following his surgery, (see Pl.'s Ex. 24). This court finds, based on Dr. Dones' testimony and personal records, that these charges were reasonably

---

[5] The $3,502.37 charge reflects a $5,000.00 payment on January 30, 2017, labeled "Insurance Payment – SELF PAY." Without further evidence, this court is unable to discern whether this payment was made by Plaintiff personally or by an insurance provider; therefore, Plaintiff has not met his burden and this amount is not recoverable.

necessary and directly related to the surgery, which Dr. Dones testified was causally linked to the accident. (See Pl.'s Ex. 2 at 21–26, 31; Pl.'s Ex. 9.) Therefore, Plaintiff may recover a total amount of $21,075.31 for the surgery and related medical expenses.

Dr. Dones referred Plaintiff for a discogram prior to surgery. While this expense would ordinarily be recoverable in light of Dr. Dones' testimony regarding the surgery, this court is unable to identify the specific cost of the discogram from the medical billing records. Dr. Dones' notes appear to indicate that Plaintiff underwent the discogram on August 29, 2016, but the Headache and Pain Center billing records contain no charge for that service date and instead suggest the discogram was performed on October 12, 2016. (Compare Pl.'s Ex. 9 with Pl.'s Ex. 34.) This court is thus unable to conclude from the evidence that the additional Headache and Pain Center charges, including the cost of the discogram, are sufficiently identified through expert testimony as reasonably necessary and causally related to the accident.

This court ultimately finds that Plaintiff may recover compensatory damages for past medical expenses of $30,297.91. This total includes $5,728.75 for the Virginia treatment; $3,493.85 for treatment at Valley Baptist; and $21,075.31 for

treatment by Dr. Dones and the cost of the decompression
surgery, associated EMG and NCV tests, and neck brace.

### 4. <u>Lost Wages, Past Pain and Suffering</u>

Plaintiff may recover $16,000.000 for lost wages. This
court finds that Plaintiff is also entitled to an award of
compensatory damages for past pain and suffering. Plaintiff asks
for $73,000.00 for past pain and suffering, or $100.00 per day
for the year immediately following the accident and $50.00 per
day thereafter. Defendants suggest that an award of $20,000.00
is reasonable.

This court ultimately finds that Plaintiff's documented
medical treatment in the aftermath of the accident merits a
substantial award for past pain and suffering. This court
credits the testimony by Plaintiff and his wife that both the
injury and this treatment were painful and difficult to endure
and that Plaintiff suffered pain while recovering from his
injections and surgery. Further, Plaintiff's decision to seek
treatment with no guarantee of future recovery or reimbursement
suggests that Plaintiff was suffering genuine pain from the
accident. This court is not persuaded that the full amount of
requested compensatory damages for medical expenses should be
awarded because there is no admissible evidence demonstrating
that all of this treatment was medically necessary. But this

court credits Plaintiff's testimony that he sought the treatment due to legitimate pain stemming from the accident. This court finds that the past pain and suffering amount should account for this otherwise uncompensated medical treatment.

However, this court also finds that the decompression surgery in January 2017 largely alleviated Plaintiff's neck pain, (see Pl.'s Ex. 2 at 30–31), and that pain and suffering damages should be awarded only for the time period of March 1, 2016 through March 2017. Plaintiff has requested $100.00 per day for that period, which would amount to a total recovery of $36,500.00. This court is persuaded, after hearing the evidence, that an amount slightly above Plaintiff's request is reasonable given the three-and-a-half months during which Plaintiff was unable to work and the continuing pain from March 2016 to March 2017, which this court finds was credibly described by Plaintiff in his testimony. This court ultimately finds that an award of $55,000.00 for past pain and suffering is reasonable.

### 5. **Future Damages**

This court, after considering all the evidence, finds that Plaintiff is entitled to compensatory damages for future disability, medical expenses, and pain and suffering. This court finds that an award of $500.00 for future medical expenses is reasonable, as this will cover the occasional purchase of over-

the-counter pain medication. The court further finds that an award of $15,000.00 for future physical impairment and disability is appropriate. This number is based, in part, on the North Carolina statutory worker's compensation table. <u>See</u> N.C. Gen. Stat. § 97-31(23).[6] Because this court finds any future pain and suffering to be nominal, this court will award $100.00. Compensatory damages for future medical expenses, disability, and pain and suffering come to a total of $15,600.00.

This court finds that Plaintiff is entitled to recover damages in a total amount of $116,897.91 — $30,297.91 for past medical treatment, $16,000.00 for lost wages, $55,000.00 for past pain and suffering, and $15,600.00 for future medical expenses, disability, and pain and suffering.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** that judgment be entered in favor of Plaintiff on his negligence

---

[6] A $56,000.00 annual salary produces an average weekly wage of $1,076.92. For 300 weeks, the total is $323,076.92. Sixty-six and two-thirds percent is $215,384.61, and ten percent (Dr. Gioffre's total disability rating) of that is $21,538.46. This court concludes, based on Dr. Gioffre's testimony, that the disability rating accounts for the possibility that Plaintiff will develop arthritis in the future. Because Dr. Gioffre stated that he would give Plaintiff "all the benefit of the doubt" but believes that "with this mini procedure that he [had] [arthritis] will probably never happen," (<u>see</u> Pl.'s Ex. 1 at 44), this court will further discount that number slightly.

claim and that Defendants are jointly and severally liable to Plaintiff.

**IT IS FURTHER ORDERED** that Plaintiff is entitled to recover from Defendants $116,897.91 in compensatory damages for Defendants' negligence.

A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 13th day of September, 2019.

_____
United States District Judge